IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 10, 2016

## STATE OF TENNESSEE v. TAZARIUS JAY VOND LEACH

**Direct Appeal from the Criminal Court for Davidson County
No. 2014-C-2329     Mark J. Fishburn, Judge**

---

**No. M2015-01866-CCA-R3-CD – Filed April 19, 2017**

---

A Davidson County Criminal Court Jury convicted the Appellant, Tazarius Jay Vond Leach, of two counts of aggravated robbery and one count of carjacking. The trial court imposed a total effective sentence of fifteen years. On appeal, the Appellant argues that the State's providing "a hypothetical using the facts of the case" to explain criminal responsibility during voir dire violated his right to a fair trial and impartial jury. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

Luke Hammond and Nick McGregor, Nashville, Tennessee, for the Appellant, Tazarius Jay Vond Leach.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Brian Ewald and Leandra Varney, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The Davidson County Grand Jury indicted the Appellant and Devante Travis Brooks a.k.a. Devonte Brooks for the aggravated robbery of Keith Beard, the aggravated

robbery of Bridgette Lofton,[1] and carjacking. The offenses occurred at the Hickory Trace Apartments complex, which was located behind Hickory Hollow Mall in Antioch.

In the light most favorable to the State, the proof adduced at trial revealed that on February 20, 2014, Beard and Lofton went to the apartment complex to see the new apartment of Beard's co-worker, "Shawn." They arrived at the complex between 7:15 and 7:45 p.m. and parked near the entrance because they did not know the exact location of Shawn's apartment. Beard got out of the car and exchanged text messages with Shawn. He advised Shawn of their arrival, and Shawn asked which car Beard had driven. Beard responded that he had driven his Monte Carlo, and Shawn replied that he was on his way to meet them. Beard and Lofton waited for ten or fifteen minutes, but Shawn never arrived and did not answer Beard's telephone calls.

While Beard and Lofton were waiting, the Appellant, in a white Impala, drove into the parking space on the driver's side of the Monte Carlo and parked. Approximately five minutes after the Impala arrived, Beard walked to the driver's door of the Monte Carlo to get back into the car. At that time, Brooks got out of the front passenger side of the Impala, pointed a black handgun at Beard, and said, "'Give me everything you got in your pockets. Whatever you got, give it to me.'" Beard put his hands up, begged Brooks not to shoot him, and stated that he did not have anything. Beard noticed that the Appellant, who was in the driver's seat of the Impala, appeared to be watching. Brooks took Beard's cellular telephone and wallet containing ninety dollars in cash.

After Brooks took the items, the Appellant got out of the Impala. Brooks asked who was in the Monte Carlo, and Beard responded that the passenger was his fiancé. Brooks pointed the gun at Beard and made him walk to the passenger side of the Monte Carlo and open Lofton's door. The Appellant searched the inside of the car, "frisked" Lofton, and took her cellular telephone and wallet. Meanwhile, Brooks told Beard to stop looking at him because he did not want Beard to be able to identify him. After the car was searched, the men told Lofton to get out of the car, and she complied. Brooks got into the driver's seat of the Monte Carlo and drove away. The Appellant followed in the Impala. Brooks shot at the victims as he drove from the scene.

After the robbery, Beard and Lofton ran to the movie theater at the mall and called the police. Metro Nashville Police (Metro) Officer William Durham arrived within ten or fifteen minutes and took the victims back to the crime scene where they were joined by two or three additional officers.

---

[1] At the time of trial, Lofton was married to Beard.

After speaking with the police, Beard contacted Shawn via Facebook and learned that the perpetrators were "Taz and Devontae Brooks." On February 21, 2014, Beard went to the police department, filed a report, gave a statement to Detective Brandon Dozier, and told the police the names of the perpetrators. Beard then was shown photograph lineups from which he identified the Appellant as the driver of the Impala and Brooks as the gunman. Lofton, however, was unable to make a positive identification of the perpetrators.

On the afternoon of May 30, 2014, Metro Officer Jamal L. Griffin was dispatched to Hermitage to investigate a suspicious white Chevrolet Impala that was parked on Hamilton Church Road. Upon learning that the vehicle was registered to the Appellant, Officer Griffin called the Appellant's telephone number, identified himself as a police officer, and tried to advise the person who answered that the car had been found, but the person ended the call.

While Officer Griffin was watching the Impala, a black man who resembled the Appellant approached the car, produced a key, and got into the car. Officer Griffin parked his patrol car behind the Impala, activated his car's emergency equipment, exited, and told the driver to get out of the Impala. The driver looked at Officer Griffin, put the vehicle in gear, and drove away. Officer Griffin did not pursue the vehicle.

Later that day, the LaVergne Police Department was notified that Metro was looking for the Appellant and his white Impala. The next day, after learning that the Appellant was "known to have stayed" at a certain apartment complex, LaVergne Police Lieutenant Konrad Kaul and other officers went to the complex to apprehend the Appellant. The officers saw the Appellant leave the apartment and get into the Impala. Lieutenant Kaul activated the emergency equipment on his patrol sport utility vehicle (SUV), pulled in front of the Appellant's car, and stopped. Lieutenant Kaul ordered the Appellant to stop his car, but the Appellant drove away. Shortly thereafter, the Appellant was stopped and taken into custody.

The Appellant presented no proof. He argued, however, that he had just "give[n Brooks] a ride," that he had no part in the planning of the robbery, and that the robbery was committed by Brooks.

The jury found the Appellant guilty of the aggravated robbery of Beard, the aggravated robbery of Lofton, and carjacking, Class B felonies. The trial court sentenced the Appellant to concurrent sentences of fifteen years for each conviction. On appeal, the Appellant argues that the State's use of hypothetical facts to explain criminal responsibility during voir dire of the jury pool violated his right to a fair trial and impartial jury.

## II. Analysis

Prior to trial, the Appellant filed a "motion in limine to exclude hypothetical questions that outline potential proof during voir dire." In the motion, the Appellant expressed concern that the State would use "hypothetical questions substantially outlining the proof to be introduced . . . to extract a pledge from a potential juror." The Appellant argued that "[h]ypothetical questions taint potential jurors by forcing them to form convictions prior to the proof and are not to be allowed during voir dire." Immediately prior to voir dire of the jury, the trial court asked the State for a response to the motion. The State said, "Well, I guess it's a little vague for me, in describing criminal responsibility for the conduct of another, typically you use a hypothetical." The trial court advised the State, "You can use a hypothetical, but not based on the facts of this case."

During voir dire, the State gave the jury the legal definition of criminal responsibility, then provided the following example:

> Let's . . . say we have four individuals, okay, and we've got a bank, normal business hour bank; one individual is driving a vehicle; one individual gets out of the vehicle when it pulls up in front of the bank and he's gonna stand on the street corner, and two other individuals go into the bank, of the two individuals that go into the bank, one has a gun, one does not. The person who goes in with the gun, demands money from the bank tellers. The person without the gun takes the money from the bank tellers. They leave the bank. The lookout person positioned on the corner to lookout and see if anyone is coming, goes to the getaway car, which is parked outside, all four of them depart together. Okay. Everyone understand that example? In this case, in that example, each and every one of those individuals is guilty of, and that is the concept, criminal responsibility for the conduct of another. Okay. So, therefore an individual, such as the getaway driver, who never touched the gun, wasn't present for when it actually happened, didn't direct anyone to give them any money or anything like that, but was participating in that crime, was aiding that crime to occur, knew that crime was going on, you know, assisted in getting away, driving away, actually had some assistance in that crime, that person is just as guilty as the gunman. Do y'all understand that? Does anyone think that that's wrong? Does anyone think that the getaway driver

shouldn't be held as culpable as the gunman in that case? Does anyone think the lookout shouldn't? Does anyone think that the accomplice inside shouldn't? Okay.

Now, of course that probably raises some questions, I mean, you want to know a lot of things to make sure you're gonna hold that getaway driver accountable as the gunman, surely you want to know if that person was aware that the crime was going on, you know, if that person – maybe that person wasn't aware, but then found out it occurred, and then benefited in the proceeds; as you heard, that's in the statute as well, you intend to benefit in the proceeds of a crime. Okay. Does anyone have any questions about the criminal responsibility for the conduct of another? Okay. Can everyone agree to follow that law? Anyone think they can't follow the law?

As I said, I bring that up because originally there were two individuals charged in this indictment, a name you're going to hear a lot is Devontae (phonetic) Brooks, he is not the person here on trial today, but you will hear about him. The person on trial is Tazarius Leach [the Appellant].

Voir dire continued until the trial court excused the jury for lunch. At that time, defense counsel reminded the trial court of its ruling on the motion in limine and objected to the State's use of hypothetical facts that were "similar to the case at hand with the fact pattern and scenario that we have."

The trial court overruled the objection, stating,

[M]y understanding of the motion and what I think is inappropriate is that you give facts of this case and you ask them to comment on the facts of this particular case, yes, in the context in which he used, it was simply to give them insight, understanding of criminal responsibility for the conduct of another, but your objection is noted.

On appeal, the Appellant argues that the hypothetical facts used by the State were too similar to the facts of the case and violated the trial court's ruling. The Appellant further argues that the hypothetical facts gave the jurors "a preconceived notion that the [Appellant was] guilty" and were prejudicial to the Appellant. The State responds that the Appellant failed to make a contemporaneous objection and contends that the issue

was waived and may be addressed only as plain error. In the alternative, the State contends that its use of hypothetical facts was proper and did not bias the jury. We agree with the State.

First, we will address the State's contention that the Appellant's failure to object contemporaneously resulted in waiver of the issue. Generally, the failure to object contemporaneously results in the waiver of an issue. See Tenn. R. App. P. 36(a). In the instant case, the trial court ruled that the State could not use hypothetical facts based on the facts of the case. The Appellant was obligated to raise a contemporaneous objection at the time the statements to which he objected were made. Because the Appellant did not do so, we agree with the State that the issue was waived and may be addressed only in the event of plain error. See Tenn. R. App. P. 36(a) (providing that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error").

We may consider an issue as plain error only when all five of the following factors are met:

> a) the record must clearly establish what occurred in the trial court; b) a clear and unequivocal rule of law must have been breached; c) a substantial right of the accused must have been adversely affected; d) the accused did not waive the issue for tactical reasons; and e) consideration of the error is "necessary to do substantial justice."

State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (footnotes omitted); see also State v. Smith, 24 S.W.3d 274, 283 (Tenn. 2000) (adopting the Adkisson test for determining plain error). Furthermore, the "plain error must be of such a great magnitude that it probably changed the outcome of the trial." Adkisson, 899 S.W.2d at 642 (internal quotation marks and citation omitted).

Our supreme court has explained that "[t]he ultimate goal of voir dire is to [e]nsure that jurors are competent, unbiased, and impartial . . . ." State v. Cazes, 875 S.W.2d 253, 262 (Tenn. 1994). Thus, prospective jurors may not be asked hypothetical questions "to commit the jurors to a course of action." Solomon v. State, 489 S.W.2d 547, 550 (Tenn. Crim. App. 1972). Nevertheless, "[t]he trial court has wide latitude in conducting the examination of prospective jurors, and its decision will not be disturbed unless there is an abuse of the court's discretion." State v. Charles McClain, No. W2013-00328-CCA-R3-CD, 2014 WL 4754531, at *11 (Tenn. Crim. App. at Jackson, Sept. 24, 2014) (citing State v. Irick, 762 S.W.2d 121, 125 (Tenn. 1988); State v. Black, 618 S.W.2d 526, 527 (Tenn. Crim. App. 1981)). We note that this court has previously

approved of the use of hypothetical scenarios similar to the one used in the instant case, concluding that it did not "ask for a commitment from the prospective jurors." Id. at *10-11; see State v. Devaron Taylor, No. W2009-01252-CCA-R3-CD, 2011 WL 4027147, at *5 (Tenn. Crim. App. at Jackson, Sept. 12, 2011).  Therefore, we conclude that the trial court did not err by allowing the State to give the hypothetical example of criminal responsibility.  The Appellant is not entitled to relief on this issue.

### III.  Conclusion

Based upon the foregoing, we affirm the judgments of the trial court.

_____
NORMA MCGEE OGLE, JUDGE